**FILED**

MAY 15 2019

~~Matthew~~ CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding

No. 4:19-mj-48

19-081-04

**APPLICATION FOR SEARCH AND
SEIZURE WARRANT "REDACTED"**

I, Derek Ryan, being duly sworn depose and say:

I am a Postal Inspector with the United States Postal Inspection Service, and have reason to believe that within the Google, Inc. accounts fully described in Attachment A, attached hereto and incorporated herein by reference, there is now concealed certain property, namely:   that fully described in Attachment B, attached hereto and incorporated herein by reference, which I believe is property constituting evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 18 U.S.C. §§ 1708 and 2115.

The facts to support a finding of Probable Cause are contained in my Affidavit filed herewith.

Derek Ryan, United States Postal Inspector
United States Postal Inspection Service

Sworn to before me, and subscribed in my presence on the 15 day of May, 2019, at Sioux Falls, South Dakota.

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A "REDACTED"

### Property To Be Searched

This warrant is directed to Google LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to (1) GPS, WiFi or Bluetooth sourced location history data generated from devices that reported a location within the geographical region bounded by the following latitudinal and longitudinal coordinates, dates, and times ("Initial Search Parameters") and (2) identifying information for Google Accounts associated with the responsive location history data:

### Location

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

- Target Location:   Geographical area identified as a radius of 150 meters around 43.760399, -96.740045.

This warrant also applies to (3) any and all GPS, WiFi or Bluetooth sourced location history data generated from the devices with the cellular telephone numbers of ███████████████████ and (4) identifying information for Google Accounts associated to the devices with the cellular telephone numbers of ███████████████████ during the following time period:

### Time Period

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

## ATTACHMENT B "REDACTED"

### Items To Be Seized And Searched

### I.    Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) pursuant to the following process:

1.    Google shall query location history data based on the Initial Search Parameters (as described in Attachment A).

2.    For each location point recorded within the Initial Search Parameters, Google shall produce anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.    Law enforcement shall review the Anonymized List to remove devices that are not relevant to the investigation, for example, devices that were not in the location for a sufficient period of time.  If additional location information for a given device ID is needed in order to determine whether that device is relevant to the investigation, law enforcement may request that Google provide additional location coordinates for the Time Period that fall outside of the Target Location. These contextual location coordinates may assist law enforcement in identifying devices that were located outside the Target Location, were not within the Target Location for a long enough period of time, were moving through the Target Location in a manner inconsistent with the facts of the underlying case, or otherwise are not relevant to the investigation.

4.    For those device IDs identified as relevant pursuant to the process described above, law enforcement may request that Google Provide identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each identified device ID.



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED

MAY 15 2019

CLERK

---

In the Matter of the Search Regarding  No. 4:19-mj-48

19-081-04

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A SEARCH
WARRANT "REDACTED"**

---

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Derek Ryan, United States Postal Inspector for the United States Postal Inspection Service, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### INTRODUCTION AND INSPECTOR BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.     The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Attachment B.

2.      I am a United States Postal Inspector with the United States Postal Inspection Service, and have been so employed since February, 2013.  I am a graduate of the US Postal Inspection Service Federal Law Enforcement Academy in Potomac, Maryland. I am currently assigned to the Sioux Falls Domicile of the US Postal Inspection Service and have experience enforcing federal mail laws.  I have received specialized training pertaining to conducting criminal investigations, investigative techniques, searching databases, conducting interviews, executing search warrants, and making arrests. During my career as a Postal Inspector, I have been involved with numerous criminal investigations, including financial crime offenses, narcotics offenses, mail theft offenses, and burglaries of Post Offices. In addition, I have six and a half years prior law enforcement experience as a police officer for the Kansas City, MO Police Department.

3.     This affidavit is based on my own personal knowledge, experience and training, and other information developed during the course of this investigation. This affidavit is also based upon information given to me by other law enforcement personnel. What follows is not meant to set forth all exhaustive knowledge of this case, but only those facts necessary in order to establish probable cause.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2115, Burglary of Post Office, and 18 U.S.C. § 1708, Theft or Receipt of Stolen Mail Matter Generally have been committed by suspects both known and unknown. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a District Court of the United States that has jurisdiction over the offenses being investigated 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO
## GOOGLE AND RELEVANT TECHNOLOGY

6.     A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. Cellular telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "landline" telephones. Cellular telephones rely on cellular towers, the location of which may provide information on the location of the subject telephone. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7.     Google is an Internet company which, among other things, provides electronic communication services to subscribers. Google allows subscribers to obtain email accounts at the domain name gmail.com. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute

[2]

evidence of the crimes under investigation because the information can be used to identify the account's user or users.

8.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

9.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

10.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  Further, information maintained by the email provider can show how, where, and when the account was accessed or used.  Based on my training and experience, I have learned that Google also maintains records that may reveal other Google accounts accessed from the same electronic device, such as the same computer or mobile device, including accounts that are linked by Hypertext Transfer Protocol (HTTP) cookies, which are small pieces of data sent from a website and stored in a user's Internet browser.

11.     Google has developed an operating system for mobile devices, including cellular phones, known as Android.  Nearly every cellular phone using the Android operating system has an associated Google account and users are prompted to add a Google account when they first turn on a new Android device.

12.     Based on my training and experience, I have learned that Google collects and retains location data from Android-enabled mobile devices when a Google account user has enabled Google location services.  The company uses this information for location-based advertising and location-based search results.  This information is derived from sources including GPS data, cell site/cell tower information, and Wi-Fi access points.

13.     Location data can assist investigators in understanding the chronological and geographic context of the email account access and use relating to the crime under investigation.  This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).

## PROBABLE CAUSE

14.     The Baltic, South Dakota Post Office is open Monday through Friday, 8 A.M. to 11:30 A.M. and 1:30 P.M. to 3:30 P.M.  The Baltic Post Office is also open on Saturdays from 7:30 A.M. to 9:00 A.M.  The Baltic Post Office has a 24-hour lobby, meaning United States Postal Service (USPS) customers can retrieve their mail from the PO Box section at any time.  The 24-hour customer lobby area is secured from the customer counter area by a heavy duty glass door (that is locked during non-business hours) and glass windows.  The customer counter area is only open during the aforementioned retail hours.  In addition, the customer lobby area is separated and secured from the employee workroom area by a wooden door with a single locking mechanism.  The same wooden door has a wooden "window" that is secured with a deadbolt.

15.     On December 20, 2016, the United States Postal Inspection Service was notified that someone had gained access into the Baltic Post Office outside of operating hours.  Dell Rapids Postmaster Robert Maxwell (who oversaw the Baltic Post Office at the time) informed the Inspection Service that Baltic Post Office employee Emily Murphy discovered the burglary on December 20, 2016, at approximately 7:00 A.M.  Postmaster Maxwell reported that Murphy told him that when she arrived at the Baltic Post Office, she found the doors and the windows were locked and secured, but observed that mail and packages were missing from inside of the Post Office.

[4]

16.   On December 20, 2016, I responded to the Baltic Post Office and processed the scene for evidence.  I did not observe any apparent signs of forced entry.  All doors, walls, and windows to the Post Office were intact with no apparent damage.

17.   On December 20, 2016, I interviewed Baltic Post Office employee Murphy.  Murphy stated on December 19, 2016 at approximately 4:30 P.M., she locked and secured all the doors and windows of the interior of the Post Office (employee workroom area and customer counter area) and the exterior north side door of the Post Office and closed the Baltic Post Office.  The main front door that leads into the 24-hour customer lobby of the Post Office stays unlocked to allow customers to access to their PO Boxes.

18.   Murphy said she arrived at the Baltic Post Office on December 20, 2016 at approximately 7:00 A.M. and observed that a portion of the letter mail that was in the PO Boxes the previous night was missing.  Murphy stated additional mail that had been lying on a workstation desk was also missing.  Murphy advised that this mail included postage due mail, certified mail, and signature confirmation mail.  Murphy advised that additional mail that was on hold for two USPS customers was missing as well.  Murphy stated several parcels were missing.  Murphy said when she closed the Post Office the previous afternoon; there were approximately seven packages in the cloth hamper located in the employee workroom.   Murphy stated when she arrived at work on December 20, 2016, she observed the cloth hamper was now empty.

19.   Murphy also said that several pieces of mail had been moved from the top of the workstation desk to the floor.  I recovered 15 pieces of mail as evidence that had been moved to the floor by the suspect(s).  I also recovered two US Mail parcels as evidence that had also been moved by the suspect(s).  One of the two US Mail parcels was found by a citizen in the alley just north of the Baltic Post Office.  Based on the location where the parcel was found, it appeared the suspect(s) dropped the parcel on the ground after exiting the Post Office.

20.   Murphy said the majority of the Post Office was currently in the same condition as when she entered the Post Office on December 20, 2016.  Murphy said she made an error in judgment and placed the mail that was received on this day's date (December 20, 2016) into some of the PO Boxes in which it was believed that mail may have been stolen from.  Murphy stated she tried to not alter or move any other items besides placing the new mail into the PO Boxes.

21.   Murphy advised that drawers in the front counter area were pulled out along with drawers to her desk located next to the front counter area.  Murphy said the middle drawer of the front counter area was also pulled out when she arrived at the Post Office but she had pushed it back in to assist customers prior to my arrival.

[5]

22. Murphy stated that the only items stolen besides US Mail, was a magnifying glass, a container holding several rubber pieces which are inserted into a "round dater" (months and dates for round dating parcels/mail) and parcel locker key #2. Murphy said parcel locker key #2 was placed in a PO Box the previous day and she noticed that it was no longer in the PO Box. Murphy stated she used a master key to gain access into parcel locker #2 and observed the parcel she had previously placed into the parcel locker was still present. Murphy later contacted the PO Box holder who told Murphy that she had not been by to retrieve her parcel and did not have parcel locker key #2. Therefore it was determined parcel locker key #2 had been stolen from that customer's PO Box.

23. Postmaster Maxwell and Murphy conducted a physical ascertainment to determine if there was a loss of Postal assets that occurred during the burglary. Postmaster Maxwell stated they determined a shortage of $99.10. Murphy advised that she placed all the cash and stamp stock into the safe prior to closing for the day on December 19, 2016 and it was not possible for the suspect(s) to steal cash or stamp stock since the safe had not be forced opened. Postmaster Maxwell informed me that this shortage amount falls below their reporting guidelines and it is not unusual for a Post Office to have an amount of shortage similar to this shortage. Postmaster Maxwell and Murphy also determined there were no Postal items missing besides the parcel locker key, the magnifying glass and the container containing the rubber date stamps.

24. I attempted to identify how the suspect(s) entered the Post Office employee workroom area due to Murphy stating that she secured all the doors to the employee workroom area prior to leaving for the day. I observed that a portion of the PO Boxes are located directly next to the wooden door that leads from the customer lobby area into the employee workroom area. Murphy was adamant that she locked this door. I asked Murphy to open PO Box 56, which is located closest to the handle on the wooden door. I was able to reach my arm through the open PO Box and almost grab the door handle on the other side. Postmaster Maxwell later informed me that he tested this same process and was able to reach through the same PO Box with a hammer and he used the claw end of the hammer to pull down on the door handle, which caused the door to unlock and open. I later contacted ████████████, who is the box holder for PO Box 56. ████████ stated she always shuts and locks her PO Box after retrieving her mail and advised that she had possession of both sets of keys to her PO Box. There are additional PO Boxes located near PO Box 56 where someone could have reached through to open the wooden door. But due to the longer distance from those PO Boxes to the wooden door, it would have been more difficult.

25. I was later contacted by Baltic Post Office employee Emily Murphy. Murphy advised that USPS customer Mike Wendland told her his son did not receive a parcel. Murphy provided me the tracking number for the parcel. According to Postal business records, the parcel, bearing USPS Parcel Select

[6]



tracking number ███████████████, was addressed to ██ ██████, Baltic, SD 57003 and weighed 5 pounds 8 ounces. The parcel arrived at the Baltic, SD Post Office on December 19, 2016 but was not scanned as delivered.

26.    On January 19, 2017, I interviewed ██████████ via telephone in regard to the US Mail parcel his son did not receive. ████████ confirmed his son never received the package. ████████ said his son's name is Connor ██████ and Connor told him he ordered a 1 x 24 inch LED light bar and two four inch cube LED lights. ████████ said Connor told him the LED lights were for his pickup and four-wheeler. ████████ stated Connor ordered the LED lights from lightbarsupply.com. ████████ said he looked at Connor's invoice and the items he ordered were described as "1x24 inch bundle with two four inch pods." ████████ said the parcel containing these items was addressed to Connor ████████████████, Baltic, SD 57003.

27.    Murphy also provided me additional information regarding parcels addressed to other Baltic USPS customers that were in the Baltic Post Office on December 19, 2016 but were missing from the Baltic Post Office on December 20, 2016. I attempted to contact each of those customers via telephone. A portion of the customers either answered the phone or returned my phone calls. The customers identified items in parcels that they had not received. These items include the following: large brown purse that was a possible Louis Vuitton knockoff, unknown $25 gift card, two $20 Walmart gift cards, dark blue Old Navy jeans, two pair of Gap sleepwear pants, LED headlamp, Jurassic Park toy, walkie talkies, nail polish, medication, dog splints, two black in color Swiss Tech jackets, miscellaneous items ordered from perpetualkid.com, two electric drop bolt locks, and four boxes of asthma cartridges. Postal customers also identified miscellaneous letter mail that they had not received including utility bills and bank statements.

28.    I prepared a cover letter to PO Box holders at the Baltic, SD Post Office explaining that the Baltic Post Office was burglarized. This cover letter was placed in approximately 160 different Baltic Post Office PO Boxes where it was determined that mail may have been stolen from those PO Boxes during the burglary. Included with the cover letters was a questionnaire asking the different USPS customers if they had not received any mail they were expecting. If the USPS customer had not received a piece of mail they were expecting, they were asked to describe the contents of those mail pieces that were missing. The cover letters and questionnaires were placed in the PO Boxes by Murphy.

29.    On or about January 10, 2017, I received a completed questionnaire from USPS customer █████████████, Baltic, SD 57003. I reviewed the questionnaire completed by ████████ and observed that she claimed she was missing a mail piece containing a Christmas card, a $25.00 Cracker Barrel gift

card, and a $25.00 Starbucks gift card. ▮▮▮▮▮▮ advised that the mail piece was mailed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Canton, SD 57013.

30.   On January 10, 2017, I interviewed ▮▮▮▮▮▮ via telephone. ▮▮▮▮ said she has identified one piece of mail that she and her husband (▮▮▮▮ ) did not receive (around the time the Baltic Post Office was burglarized). ▮▮▮▮ stated the sender of the mail piece sent her a New Year's letter asking her if she was enjoying the gift cards. ▮▮▮▮ advised that she did not know what the sender was talking about and called the sender. The sender told ▮▮▮▮ that she had mailed her a $25.00 Cracker Barrel gift card, a $25.00 Starbucks gift card and a Christmas card photo of the sender's family. ▮▮▮▮ stated the sender of the mail piece is ▮▮▮▮▮▮▮▮▮. ▮▮▮▮ said she and her husband usually pick up their mail every day in the afternoon at the Baltic Post Office. ▮▮▮▮▮▮ said they receive all of their mail at their PO Box, ▮▮▮▮, Baltic, SD 57003.

31.   On January 10, 2017, I interviewed ▮▮▮▮▮▮▮▮ via telephone. ▮▮▮▮ said she mailed a $25.00 Cracker Barrel gift card, a $25.00 Starbucks gift card and a Christmas card (family picture) to ▮▮▮▮▮▮▮▮ in Baltic, SD. ▮▮▮▮ stated she purchased the gift cards from Walmart on December 14, 2016. ▮▮▮▮ stated she is certain she mailed these gift cards to the ▮▮▮▮ because they are the only people she mailed a Starbucks and Cracker Barrel gift card too. ▮▮▮▮ provided me two photos of the Walmart receipt regarding the purchase of the Starbucks and Cracker Barrel gift card.

32.   On January 19, 2017, I again interviewed ▮▮▮▮▮▮▮▮ via telephone. ▮▮▮▮ stated on December 14, 2016, she purchased the envelopes she used to mail out her Christmas cards, including the Christmas card and gift cards mailed to the ▮▮▮▮. ▮▮▮▮ said that after purchasing the envelopes, she went home and prepared her Christmas cards (including the ▮▮▮▮). ▮▮▮▮ said she believes she mailed the gift cards and Christmas card to the ▮▮▮▮ on either Friday, December 16, 2016 or Saturday, December 17, 2016. ▮▮▮▮ stated she was unsure if she mailed the Christmas card and gift cards to the ▮▮▮▮ from the Canton, SD Post Office or the Lewis Drug Store located at 26th and Sycamore in Sioux Falls, SD.

33.   According to ▮▮▮▮, she mailed the Christmas card and gift cards to the ▮▮▮▮ on either Friday, December 16, 2016 or Saturday, December 17, 2016. Therefore, the mail piece would have most likely arrived at the Baltic Post Office by Monday morning, December 19, 2016. The mail piece would have been placed in the Olson's PO Box by the Baltic Post Office.

34.   On January 19, 2017, I interviewed ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ via telephone. ▮▮▮▮▮▮ said he picks up their mail 99% of the time and not his wife. ▮▮▮▮▮▮ said he sometimes does not pick up their mail from the Baltic Post Office on Mondays because he does not work on Tuesdays

and he will retrieve their mail on his day off (Tuesdays).  said he could not remember if he picked up their mail on Monday, December 19, 2016. ▮▮▮ stated it was possible that he did not pick up their mail on Monday, December 20, 2016 since he did not work the following day (Tuesday, December 20, 2016).

35.   I contacted InComm Fraud Analyst Bobby Phillips and asked if he would be able to identify the full gift card numbers for the Cracker Barrel and Starbucks gift cards by using the information from ▮▮▮ Wal-Mart receipt. Photographs of ▮▮▮ Wal-Mart receipt were provided to Fraud Analyst Phillips. Fraud Analyst Phillips contacted me and advised that he located the full gift card numbers for both gift cards. Fraud Analyst Phillips also provided additional information for both gift cards. According to the information provided by Fraud Analyst Phillips, the Cracker Barrel gift card was in the amount of $25.00, the last four digits of the gift card number was 8278 (full gift card number was provided), and the gift card was purchased at 11:52 AM EST on December 14, 2016 at the Walmart located at 5521 E Arrowhead Pkwy., Sioux Falls, SD. The Starbucks gift card was in the amount of $25.00, the last four digits of the gift card number was 3578 (full gift card number was provided), and the gift card was purchased at 11:52 AM EST on December 14, 2016 at the Walmart located at 5521 E Arrowhead Pkwy., Sioux Falls, SD.

36.   I contacted Starbucks customer service and learned the aforementioned Starbucks gift card had been used on three transactions. The transactions occurred on January 13, 2017, January 18, 2017, and January 31, 2017. All three transactions occurred at the drive thru lane of Starbucks store number 2799, located at 418 S Minnesota Ave., Sioux Falls, SD. I was informed by Starbucks Corporate Investigations Senior Investigator Lang that the interior surveillance video system at the Starbucks store located at 418 S Minnesota Ave., Sioux Falls, SD, was not working for the entire month of January, 2017. Lang advised that the drive thru surveillance camera was also not working, therefore no surveillance video was available. There were no additional transactions after these three transactions.

37.   On February 8, 2017, I spoke with Cracker Barrel Guest Relations Representative Sherell White. I provided White the Cracker Barrel gift card number that was mailed by ▮▮▮ to the ▮▮▮. White stated this gift card was purchased on December 14, 2016 at a Wal-Mart. White advised that the gift card was used to purchase a "to-go" order at the Cracker Barrel located at 2409 S Shirley Ave., Sioux Falls, SD 57106. White said this transaction occurred on February 4, 2017 at 9:47 P.M. White said the price of the food purchased was $8.59 and there was a balance of $16.41 on the gift card. White later provided me a scanned copy of the transaction receipt. The scanned copy of the receipt identified the last four of the gift card that was used to purchase the order as 8278, which is the same last four of the aforementioned Cracker Barrel gift card purchased by ▮▮▮ at a Sioux Falls, SD Wal-Mart. White confirmed the

full gift card number provided by me to her is the same gift card number used to purchase the to-go order.  According to the receipt, the to-go order was placed via telephone on February 4, 2017 at 9:47 P.M.  The customer paid for the to-go order on February 4, 2017 at 10:27 P.M.

38.  On February 9, 2017, I contacted Cracker Barrel Guest Relations Representative White via telephone in order for her to further explain the receipt for the transaction.  White stated that the customer name for the order is "███",
the name of "█████" on the receipt is the manager that was on duty at the time of the transaction and the name of "█████" on the receipt is the name of the server who assisted the customer for the transaction.  White said she believed the phone number that was used to call Cracker Barrel to place the order was ████████ (which was listed on the receipt) and thought the area code should the area code of where the transaction occurred (Sioux Falls area code is 605).

39.  On February 9, 2017, I contacted Cracker Barrel General Manager Mortrude.  Mortrude is the General Manager of the Cracker Barrel located at 2409 S Shirley Ave., Sioux Falls, SD 57106.  I requested surveillance video of the transaction that occurred on February 4, 2017 at 10:27 P.M.  Mortrude agreed to assist and I provided Mortrude a copy of the receipt.  Mortrude retrieved surveillance video of the transaction and showed me the surveillance video from different surveillance cameras located within and outside the restaurant.

40.  I observed there were two surveillance cameras inside of the Cracker Barrel that showed the suspect who used the stolen Cracker Barrel gift card to make the purchase on February 4, 2017 at 10:27 P.M.  I saw that the suspect was a white female, approximately 25-35 years of age, blonde/brown hair, wearing an orange headband, navy blue and orange "Aeropostale" hooded sweatshirt and orange pants.

41.  I also observed there were two surveillance cameras outside of the Cracker Barrel that showed the suspect and the vehicle driven by the suspect. The surveillance camera recordings showed a dark colored, newer model SUV or minivan pull into the Cracker Barrel parking and park in the parking lot in front of the Cracker Barrel, near the southeast portion of the restaurant.  I observed the suspect exit the vehicle from the front driver side door then enter the Cracker Barrel in the main front entrance.  I observed the suspect that exited the dark colored SUV or minivan to be the same suspect that purchased the to-go order at 10:27 P.M.  Mortrude provided me a copy of the surveillance video.

42.  On February 9, 2017, I contacted Sioux Falls Police Department Det. Iverson and requested him to run phone number ████████ (phone number listed on the Cracker Barrel to-go order transaction receipt) through their record system.  Det. Iverson sent me a global subject entry form that identified ████ ████████, white female, date of birth (DOB) ████████, identified this phone number to law enforcement as her cell phone number.  The same records

[10]

identified a last known address for ████ to be ██████, Sioux Falls, SD. Det. Iverson also provided a Sioux Falls police report regarding an incident where ██████, white male, DOB ██████, was arrested for aggravated assault domestic. The victim was identified as ████' girlfriend, ██ ██████. The incident occurred on February 7, 2017 at ██ ████, Sioux Falls, SD. In the report, ████ identified her phone number as ████ and ████ identified his phone number as ████. Det. Iverson provided me booking photos of ████ and I observed that she matched the appearance of the subject who used the stolen Cracker Barrel gift card on February 4, 2017 to purchase food at the Cracker Barrel located at 2409 S Shirley Ave., Sioux Falls, SD.

    43.   On February 10, 2017, I drove by the residence located at ████ ███, Sioux Falls, SD. I observed a black GMC Acadia parked in front of the residence on 1st street. I observed the vehicle had Iverson Ford Mitchell Huron dealer plates on the vehicle. I identified the vehicle's VIN as ████████, which responded back as a 2009 GMC Acadia. The vehicle matched the appearance of the vehicle driven by the subject who used the Cracker Barrel gift card on February 4, 2017.

    44.   I received records from Iverson Ford/Iverson CDJR Huron General Manager Daniel Heidinger regarding any and all information relating to the recent sale of the black GMC Acadia bearing the aforementioned VIN. Heidinger provided me photocopies of the following: a receipt for the purchase of the vehicle in the amount of $12,120.00, the purchase order for a motor vehicle, a photocopy of the purchaser's South Dakota identification card (████ ██████), the State of South Dakota Application for Motor Vehicle Title & Registration document, a second purchase order for a motor vehicle form (this identified that Iverson Ford "sold" the GMC Acadia to Iverson CDJR before it was sold to ██████████), and a South Dakota secure dealer re-assignment form. The documents identify that ██████ purchased the vehicle on December 29, 2016. ██████ was also listed on the application for the motor vehicle title and registration. The addresses listed for ████ and ██████ were ████, Baltic, SD and ████, Baltic, SD. Heidinger also provided a photocopy of the lead request from CarGurus sent to Iverson Ford Huron. The customer is identified as ██████ and the customer identified their phone number as ████.

    45.   On February 17, 2017, Murphy provided me a photocopy of the PO Box application for ████, Baltic, SD. The application identified the applicant as ██████, with a physical address of ██████, Baltic, SD.

46.    On February 17, 2017, Minnehaha County Sheriff's Office Det. Zishka provided me a police report regarding an incident that occurred on January 3, 2017 at ██████████████, Sioux Falls, SD. The police report identified that ██████████████████████ live at the residence and were arrested as a result of narcotics being located at this residence during a parole search. ██████████████ juvenile daughter was present at the residence and she was transported to ██████ residence at ██████████, Sioux Falls, SD and released to the custody of ████. The police report identifies the primary phone number for ██████████ as ██████████ and the primary phone number for ████████ as ██████████.

47.    I received records from AT&T regarding phone number ██████████ (identified by ██████ as her phone number), and Verizon and TracFone for phone numbers ██████████████████████████████ ██████████.

48.    The records provided by AT&T regarding phone number ████ ██████████████████████████████, Sioux Falls, SD. The service start date was identified as November 27, 2016.

49.    The records provided by TracFone regarding phone number ████ ██████ identified that the phone number was deactivated on November 4, 2016 and no subscriber information was available.

50.    The records provided by TracFone regarding phone number ████ ██████ identified an initial activation date of May 13, 2016 and a deactivation date of January 11, 2017.  The customer first and last name was not identified but an email of ██████@gmail.com was identified on the records.  Purchase history information identified the credit card holder as ██████████ ██████, Baltic, SD.

51.    The records provided by TracFone regarding phone number ████ ██████ identified an activation date of June 7, 2016 and a deactivation date of January 8, 2017.  The purchase history information identified the credit card holder as ██████████████████████, Baltic, SD.

52.    ██████████████████████████████████████





53.

54.

55.

56.

57.



58.

59.

60.

61.

62. █████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

63. █████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

64. █████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

65.    On January 23, 2018, I drove by the address of ██████████████,
Sioux Falls, SD and observed a white Chevrolet Silverado parked in an alley
behind (just west of) ████████████. I was unable to see the driver of the
vehicle. I observed the white Chevrolet Silverado begin driving south out of the
alley behind ████████████ and then the vehicle turned west on 15th street. As
the vehicle was driving south out of the alley, I observed a light bar attached to
the front of the vehicle's grill. It appeared the light bar was approximately two
feet wide. I was able to obtain the vehicle's license plate which I identified as
South Dakota license plate ██████. The license plate responded back to a 2003
white Chevrolet Silverado, registered to ████████████████████████
██████, Sioux Falls, South Dakota.

66. █████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



67.    On March 15, 2018, Sioux Falls Police Department Det. Buiter was investigating an unrelated criminal matter at the Motel 6 located at 3009 W Russell St., Sioux Falls, SD.  Det. Buiter advised that he observed a white Chevrolet truck bearing South Dakota license plate ███████ (registered to ████ ██████) parked at the Motel 6.  Det. Buiter reported that a light bar was attached to the front of the truck.  Det. Buiter advised that he took a photo of the light bar attached to the truck.  Det. Buiter provided me the photo he took of the light bar on ███████' truck. I observed the light bar was similar to the light bar stolen from the Baltic Post Office.

68.



69.



70.

71.

72.

73.

74. 

75.

76.

77.

78.



79. 

**Affiant Note:** Baltic USPS customer Christian Swenson advised that he ordered two black in color Swiss Tech jackets that he never received. Additionally, Baltic USPS customer Kelly Denton advised that she did not receive a parcel that contained a brown and tan purse.  Denton stated the purse was a possible Louis Vuitton knockoff.

80.

81.

82.



83.

84.

85.

86.

87.

88.     Baltic, SD is a small rural town with a population of approximately 1,171 (2017 census estimate).  The Baltic Post Office is not located on a heavily traveled street.  Although the 24-hour customer lobby of the Baltic Post Office was open when the burglary occurred, the employee workroom area was closed and the Post Office was not open for business.  Additionally, the burglary likely occurred during nighttime hours, when even less people were possibly in the area of the Baltic Post Office when the burglary occurred.  Therefore, there would not be a reason for many people to be in the immediate area of the Baltic Post Office or located within the Baltic Post Office during the time of the burglary.  Given this information and the information mentioned previously in this affidavit, there is reason to believe information gathered from this warrant would more than likely be related to the Baltic Post Office burglary that is being investigated.

89.     Additionally, if the cellular phones listed below were used by the suspect(s) at or near the time of the burglaries, the records described in Attachment A of this Application would be relevant and material to the investigation in determining individual(s) involved in the aforementioned Post Office burglaries.

**CONCLUSION**

90.     Based on the forgoing, I request that the Court issue the proposed search warrant.  Because the warrant will be served on Google, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Derek Ryan, United States Postal Inspector
United States Postal Inspection Service

Sworn to before me, and subscribed in my presence on the _15th_ day of May, 2019, at Sioux Falls, South Dakota.

VERONICA L. DUFFY
United States Magistrate Judge

[21]

## ATTACHMENT A "REDACTED"

### Property To Be Searched

This warrant is directed to Google LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to (1) GPS, WiFi or Bluetooth sourced location history data generated from devices that reported a location within the geographical region bounded by the following latitudinal and longitudinal coordinates, dates, and times ("Initial Search Parameters") and (2) identifying information for Google Accounts associated with the responsive location history data:

### Location

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

- Target Location:   Geographical area identified as a radius of 150 meters around 43.760399, -96.740045.

This warrant also applies to (3) any and all GPS, WiFi or Bluetooth sourced location history data generated from the devices with the cellular telephone numbers of ██████████████████████ and (4) identifying information for Google Accounts associated to the devices with the cellular telephone numbers of ██████████████████████ during the following time period:

### Time Period

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

## ATTACHMENT B "REDACTED"

### Items To Be Seized And Searched

## I.   Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) pursuant to the following process:

1.   Google shall query location history data based on the Initial Search Parameters (as described in Attachment A).

2.   For each location point recorded within the Initial Search Parameters, Google shall produce anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.   Law enforcement shall review the Anonymized List to remove devices that are not relevant to the investigation, for example, devices that were not in the location for a sufficient period of time.  If additional location information for a given device ID is needed in order to determine whether that device is relevant to the investigation, law enforcement may request that Google provide additional location coordinates for the Time Period that fall outside of the Target Location. These contextual location coordinates may assist law enforcement in identifying devices that were located outside the Target Location, were not within the Target Location for a long enough period of time, were moving through the Target Location in a manner inconsistent with the facts of the underlying case, or otherwise are not relevant to the investigation.

4.   For those device IDs identified as relevant pursuant to the process described above, law enforcement may request that Google Provide identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each identified device ID.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding  No. 4:19-mj-48

19-081-04

**SEARCH AND SEIZURE WARRANT
"REDACTED"**

TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search of the Google, Inc. accounts fully described in Attachment A, attached hereto and incorporated herein by reference.

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the property described above, and that such search will reveal evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 18 U.S.C. §§ 1708 and 2115, as fully described in Attachment B, attached hereto and incorporated herein by reference.



**YOU ARE COMMANDED** to execute this warrant on or before
__5-29-19_____ (not to exceed 14 days)
☒ in the daytime – 6:00 a.m. to 10:00 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized,

☐ for _____ days *(not to exceed 30).*
☐   until, the facts justifying, the later specific date of _____.

5-15-19 at 4:06pm CDT   at Sioux Falls, South Dakota
Date and Time Issued

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

[2]

## ATTACHMENT A "REDACTED"

### Property To Be Searched

This warrant is directed to Google LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to (1) GPS, WiFi or Bluetooth sourced location history data generated from devices that reported a location within the geographical region bounded by the following latitudinal and longitudinal coordinates, dates, and times ("Initial Search Parameters") and (2) identifying information for Google Accounts associated with the responsive location history data:

### Location

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

- Target Location:   Geographical area identified as a radius of 150 meters around 43.760399, -96.740045.

This warrant also applies to (3) any and all GPS, WiFi or Bluetooth sourced location history data generated from the devices with the cellular telephone numbers of ████████████████████ and (4) identifying information for Google Accounts associated to the devices with the cellular telephone numbers of ████████████████ during the following time period:

### Time Period

- Time Period (including time zone): 12/19/2016 4:30 PM CST – 12/20/2016 7:00 AM CST

## ATTACHMENT B "REDACTED"

### Items To Be Seized And Searched

## I.    Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) pursuant to the following process:

1.    Google shall query location history data based on the Initial Search Parameters (as described in Attachment A).

2.    For each location point recorded within the Initial Search Parameters, Google shall produce anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.    Law enforcement shall review the Anonymized List to remove devices that are not relevant to the investigation, for example, devices that were not in the location for a sufficient period of time.  If additional location information for a given device ID is needed in order to determine whether that device is relevant to the investigation, law enforcement may request that Google provide additional location coordinates for the Time Period that fall outside of the Target Location. These contextual location coordinates may assist law enforcement in identifying devices that were located outside the Target Location, were not within the Target Location for a long enough period of time, were moving through the Target Location in a manner inconsistent with the facts of the underlying case, or otherwise are not relevant to the investigation.

4.    For those device IDs identified as relevant pursuant to the process described above, law enforcement may request that Google Provide identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each identified device ID.